David Meade Peebles, et al. [1] v. Commissioner. Peebles v. Commissioner
Docket Nos. 50674-50676, 59422.
United States Tax Court
T.C. Memo 1956-160; 1956 Tax Ct. Memo LEXIS 142; 15 T.C.M. (CCH) 801; T.C.M. (RIA) 56160; June 29, 1956
David Meade Peebles and Mary Crockett Peebles, 2912 Cortland Place, Northwest, Washington, D.C., pro se. A. Russell Beazley, Jr., Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion The respondent has determined deficiencies in income tax and additions to the tax as follows: Year
Docket No.
Petitioner
Deficiency
Additions to Tax
1947
50674
David Meade Peebles
$ 1,539.49
$384.87 ( § 291(a))
178.13 ( § 293(a))
1947
50675
Mary Crockett Peebles
1,648.26
412.07 ( § 291(a))
167.91 ( § 293(a))
1948
50676
David Meade Peebles and Mary Crock-
ett Peebles
17,900.02
895.00 ( § 293(a))
1949
59422
David Meade Peebles and Mary C.
Peebles
2,154.68
*143 The respondent, by amended answer, claimed additional deficiencies for 1947 as follows: 50674
David Meade Peebles
$420.17
$105.05 ( § 291(a))
21.00 ( § 293(a))
50675
Mary Crockett Peebles
420.18
105.04 ( § 291(a))
21.01 ( § 293(a))
The issues in these consolidated proceedings are (1) whether gains realized by the petitioners in 1947, 1948, and 1949 from the sale of real property should be taxed as capital gains or as ordinary income; (2) whether certain items were properly included by respondent in the net worth computation for the year 1948; and (3) whether additions to tax under sections 291(a) and 293(a) of the 1939 Internal Revenue Code are due from the petitioners for the years 1947, 1948, and 1949. It has been conceded by the petitioners that their income for the years involved was properly computed on the cash basis. It has been conceded by the respondent that an asset designated as "Land - north of Landover Road" was owned by David Meade Peebles and his wife, Mary, on December 31, 1947. Effect will be given to this concession in the Rule 50 computation. Findings of Fact Some of the facts have been stipulated and they are *144 found accordingly. David Meade Peebles, hereinafter called the petitioner, and his wife, Mary Crockett Peebles, are residents of Washington, D.C. On March 15, 1948, petitioner filed a form 1040 for the year 1947 wth the collector of internal revenue for the district of Maryland with the statement "This is not a complete return." On the same date the petitioner's wife filed a form 1040 for the year 1947 with a similar statement. No information or computations appeared on either of these forms. Up to the time of this hearing neither the petitioner nor his wife had filed a Federal income tax return for the year 1947. Petitioner and his wife filed joint income tax returns for the years 1948 and 1949 with the collector of internal revenue for the district of Maryland. For some years prior to 1936 the petitioner was engaged in the manufacture of chemicals in Rosslyn, Virginia. The property on which the operations were conducted was leased on a month to month basis. In 1939 petitioner was compelled to move the chemical operations to a different site nearby, also in Virginia, and in 1941 the petitioner was again compelled to move the chemical plant, this time to property purchased in that *145 year by the petitioner in Kenilworth, Maryland. The chemical operations entailed some hazard, and there were instances of accidents causing disagreeable fumes. Neither of the two changes in location was brought about by the nature of the chemical business conducted by the petitioner. It was decided by the petitioner, after locating his chemical plant in Kenilworth, Maryland, that such location would be a permanent one since there was adequate room for all necessary operations and also adequate protection from the complaints of neighbors. On October 3, 1936, the petitioner purchased undeveloped land in the District of Columbia in the vicinity of Riggs Road at a cost of $7,200, consisting of 3.6116 acres, designated as parcel 137/11, with a 16 foot right of way across a portion of the property lying north of this tract. On November 2, 1943, the petitioner purchased at a cost of $8,091.33, 1.6211 acres of undeveloped land, designated as parcel 137/10, in the District of Columbia, immediately north and adjacent to the property purchased in 1936. Petitioner also made the following purchases of undeveloped property in this immediate vicinity in the District of Columbia as follows: Year
Description
Cost
Quit-claim deeds dated
Nov. 15, 1943 and
Mar. 23, 1946
Lot 39, Square 3700
$ 425.00
November 3, 1943
Lots 34, 35, 38, 40, 41, Square 3700
Lots 61, 62, 63, 64, 66, Square 3701
Lot 54, Square 3709
2,819.40
December 21, 1943
Lots 36, 37, Square 3700
Lots 56, 57, Square 3701
1,486.35
February 3, 1944
Lots 73, 74, 75, Square 3701
1,201.05
May 16, 1944
Lots 42, 43, Square 3700
Lots 55, 70, Square 3701
2,105.57
July 1, 1947
Parcel 125/11
2,174.97
*146 Petitioner made the original purchase of the District of Columbia property in 1936 to get a permanent site for his chemical plant. Building materials were assembled at the site, and a permit was obtained to build a small building to manufacture a bleach compound. The small building was never completed and by 1941 the petitioner abandoned all plans to use this property as a site for his chemical operations. Prior to 1941 the property had been graded by the petitioner to the level of an adjacent railroad track. Parcel 137/10, immediately north of and adjacent to parcel 137/11 purchased in 1936, was purchased by petitioner in 1943 to make parcel 137/11 more attractive by providing a wider and more secure right of way to and from such property. Petitioner made the purchases of the other parcels in this immediate area to enhance the value of the property already purchased. Some time after 1941 the petitioner also graded some of the streets in this immediate area. In 1947 the petitioner constructed a railroad siding on parcel 125/11. At various times during the years here involved officials of the Pennsylvania Railroad referred to the petitioner prospective customers for the purchase *147 of industrial property. Petitioner's banker also referred a prospective customer during the years here involved to the petitioner for the purpose of acquiring some of the petitioner's property. Petitioner made the following disposals of the property acquired by him in the District of Columbia: Selling
Year
Description
To
Price
Approximately
4853 acres from parcel 137/11
U.S. Government (condemna-
1943
tion) $
November 10, 1943
2.2591 acres from parcel 137/11
T. Nelson Jeffress
15,000.00
1946
704.29 sq. ft. from parcel 137/10
Dist. of Columbia (condem-
nation)
456.95
April 3, 1946
19,237 sq. ft. from parcel 137/10
7,406.82
July 1, 1947
8,546 sq. ft. from parcel 125/11 pur-
chased by the petitioner on the
same date
Boyer and McIlvaine
883.75
July 1, 1947
5,004 sq. ft. from parcel 137/10
Balance of parcel 137/11 (except for
a 25 ft. strip on westerly edge)
Boyer and McIlvaine
23,068.12
January 15, 1947
10,000 sq. ft. from parcel 137/10
Hedin
6,000.00
April 20, 1947
Lot 54, Square 3709
800.00
February 11, 1948
Portion of parcel 125/11
Portion of lots 55, 56, 57, in Square
3701
Norman Gatker
3,496.70
February 16, 1948
Portion of parcels 125/11 and 137/10
1/2 of lot 38, Square 3700
Lots 39, 40, 41, 42, and 43, Square
Victor Cushwa
26,814.23
3700
February, 1948
Portion of parcel 137/10
Lots 61, 62, 63 and 64, Square 3701
Portions of lots 55, 56, and 57, Square
3700
Eaton
21,056.99
*148 In 1941 the petitioner purchased for $15,000 approximately 38 acres of undeveloped land in Kenilworth, Maryland. During the years 1942 through 1946 the petitioner improved the Kenilworth property for industrial purposes by filling in the low places with "fly ash" and by building railroad sidings. In 1946 the petitioner had a portion of the Kenilworth property subdivided into parcels and dedicated streets in the subdivision to the county for public use. The subdivided portion became known as the Peebles Addition. Prior to the subdivision, petitioner sold improved portions of the Kenilworth property in 1942 and 1946. In 1947 petitioner sold parcels G and H located in Peebles Addition for $23,955.10, and in 1948 the petitioner sold parcel J in the Peebles Addition for $17,631.20. On July 11, 1947, the petitioner purchased at a cost of $161,220.78 approximately 79 acres of land, hereinafter called Beaver Heights, in the general vicinity of the Kenilworth property. About 60 acres of Beaver Heights were unsubdivided land, with the rest of it subdivided in lots. At the time of this purchase the petitioner was aware of the plans of the Maryland-National Park and Planning Commission to locate *149 a proposed Washington-Annapolis express highway within less than a half mile of Beaver Heights. On the same day of the Beaver Heights purchase, petitioner sold a single lot (lot 5, Block A) out of such purchase for $3,496.15. In 1948 the petitioner sold to the Ceco Steel Corporation 15 undeveloped lots in the Beaver Heights property for $28,208.50. On March 17, 1949, petitioner sold for $3,500, as one parcel, a portion of the Beaver Heights property consisting of parts of three lots in Block N. On April 14, 1949, petitioner sold for $3,000 a portion of the Beaver Heights property consisting of lots 5, 6, and 7 in Block P. On May 2, 1949, petitioner sold for $35,000 approximately 18 acres of non-subdivided land in Beaver Heights to a purchaser who intended to construct a housing project on such property. On July 11, 1949, the petitioner sold for $35,000 a portion of the Beaver Heights property consisting of 58 undeveloped lots in Blocks H, I, J, K, L and M to a purchaser who intended to use the land for an apartment house development. Petitioner was aware of the plans of these purchasers to construct a housing project and an apartment house development. Petitioner paid a commission *150 of $1,750 to Charles E. Smith in connection with this last sale. In 1948 the petitioner sold approximately two acres of land located in Maryland north of Landover Road which had been purchased some time prior to January 1, 1947 at a cost of $2,057.20. Petitioner, in 1948, made an active effort to sell this parcel of land. In 1947 the petitioner purchased five adjoining parcels of undeveloped land in Cheverly, Maryland, at a cost of $17,399.40. In 1948 the petitioner purchased approximately 101 acres of undeveloped land in Landover, Maryland, at a cost of $91,056.34. About 40 acres of this property was zoned as industrial property at the time of the purchase. During the years 1947, 1948, and 1949 the petitioner did not have sufficient income to meet his outstanding obligations in connection with his various real estate holdings. Since the year 1941 the petitioner has sold sand and gravel from the various properties owned by him. Sand was sold in 1941 from parcel 137/11 in the District of Columbia. Petitioner advertised the sale of sand and gravel in 1946 and 1947. A gravel deposit in Maryland was purchased by petitioner in 1946, but the property had been unused up to the date *151 of the hearing. During the years 1947, 1948, and 1949 the petitioner owned several heavy items of equipment located at the property in Kenilworth, Maryland, that could be utilized in the preparation of sand. Petitioner's properties at Beaver Heights (Kenilworth, Maryland), the Landover (Maryland) property, and the Addison Road (Maryland) property contained sand deposits. Petitioner did not have a sand plant in operation during the years 1947, 1948, and 1949 on any of his properties. In 1947 and 1948 petitioner advertised industrial property for rent in a District of Columbia newspaper. Petitioner leased various parcels of property as follows: Period of
Year
Description
To
Lease
1944
3 acres (approximately) of undeveloped land with
Lock Joint Pipe
railroad facilities in Kenilworth, Md.
Co.
1 year
1946
Undeveloped land with railroad facilities at Kenil-
F.H.A.
(lease canceled in
worth, Md.
1946)
1946
20,000 sq. ft. of undeveloped land with railroad
facilities in Peebles Addition (Kenilworth, Md.)
R. Kennedy
10 years
1946
37,300 sq. ft. of undeveloped land with railroad
facilities in Peebles Addition (Kenilworth, Md.)
T. McNamara
10 years
1946
40,119 sq. ft. of undeveloped land with railroad
Cummings and
facilities at Kenilworth, Md.
Stack
10 years
1946
Parcel H and part of Parcel G (undeveloped land)
in Kenilworth, Md.
B. S. Robeson
unrecorded lease
1947
7,000 sq. ft. of undeveloped land in Peebles Addi-
tion (Kenilworth, Md.)
N. Mirto
4 years
1947
Portion of parcel G (undeveloped land) in Peebles
Addition
Utility Lines
1947
Parcel H and part of parcel G in Peebles Addi-
tion (undeveloped land)
B. S. Robeson
5 years
1947
Lots 61, 62, 63, 64, Square 3701
Rear section of lots 55, 56, 57, Square 3701,
8,511.68 sq. ft. in parcel 137/37 (all land (unde-
veloped) located in District of Columbia)
R. Eaton
10 years
1947
Portion of parcel 137/10 in District of Columbia
(undeveloped land)
V. Cashwa
10 years
*152 Beginning in 1949 the petitioner also leased approximately five other parcels of undeveloped property in Kenilworth, Maryland, to various industrial and business concerns. Respondent determined the petitioner's net income for the years 1947 and 1948 by the net worth plus personal living expenditures method. The parties agreed that it was appropriate to compute the petitioner's net income for the two years by the net worth method. Respondent's computation of the petitioner's net worth was as follows: COMPARATIVE NET WORTH STATEMENT
Assets
Jan. 1, 1947
Dec. 31, 1947
Dec. 31, 1948
Cash on hand
$ 50.00
$ 50.00
$ 50.00
Arlington Trust Co. Checking
Acct.
cr (2,335.25)
cr (151.34)
80.83
Second Nat'l Bank Checking Acct.
cr (1,253.96)
cr (327.62)
Nat'l Bank of Commerce Checking
Acct., Norfolk, Va.
217.63
359.34
135.54
Net Cash
cr (2,067.62)
cr (1,995.96)
cr (61.25)
Accounts Receivable
14,653.62
10,055.55
15,786.31
Cylinders from War Assets Adm.
13,000.00
Furniture & Equipment used in bus.
63,969.66
91,581.99
91,437.36
Real Estate
126,038.48
320,042.74 *
379,006.11
Deposit on Real Estate, etc. &
Amount in Escrow
47,800.00
17,140.00
(2,688.71)
Unamortized Commission for secur-
ing loan
2,320.20
1,684.54
Total Assets
$263,394.14
$440,144.52
$485,164.36
Liabilities
Accounts Payable
$ 5,956.33
$ 15,514.53
$ 11,678.94
Notes Payable
130,969.00
270,961.52
271,333.44
Total Liabilities
$136,925.33
$286,476.05
$283,012.38
Net Worth
$126,468.81
$153,668.47
$202,151.98
Increase in Net Worth
27,199.66
48,483.51
*153 Brought forward: Increase in Net Worth $
$ 27,199.66
$ 48,483.51
Living Expenses less standard de-
duction
10,900.64
12,669.56
Taxes Paid (Income)
5,433.60
2,540.00
Loss on Sale of Chevrolet & Dodge
(Personal Allocation)
62.50
136.42
Sub Total $
$ 43,596.40
$ 63,829.49
Less: Depreciation $
$ 6,784.99
$ 8,922.20
1/2 Gain from Sale of Cars
577.57
91.60
Loan from Aunt
5,000.00
1/2 Gain from Sale of Cylinders
from War Assets Adm.
3,605.87
Net Income Corrected $
$ 27,627.97
$ 54,815.69
1/2 to David Meade Peebles
$ 13,813.99
$ 27,407.85
1/2 to Mary Crockett Peebles
$ 13,813.98
$ 27,407.84
It has been stipulated that the amounts *154 used in the net worth computation are correct except for the following amounts: Jan. 1, 1947
Dec. 31, 1947
Dec. 31, 1948
Accounts Receivable
$14,653.62
$ 10,055.55
$15,786.31
Unamortized Commission
2,320.20
1,684.54
Accounts Payable
11,678.94
Notes Payable
270,961.52
Loan from Aunt
5,000.00
It has been conceded by the petitioner on brief that the amounts for unamortized commissions are correct as used by the respondent in his computations. Respondent concedes that there was a $5,000 obligation outstanding as of December 31, 1947. The respondent, in determining the deficiencies for the years 1947, 1948, and 1949, treated the gain from the various real estate transactions as ordinary income. Petitioner's income tax return for 1947 did not reveal any income, nor any other information. On his returns for 1948 and 1949 the petitioner treated the gains from the real estate transactions as long-term capital gains. Petitioner, in 1947, 1948 and 1949, held the various parcels of property owned by him in the District of Columbia, Kenilworth, Maryland (except for the chemical plant site), and the property known as "Land - north of Landover *155 Road" primarily for sale to customers in the ordinary course of his business. Petitioner had amounts receivable as of January 1, 1947, December 31, 1947, and December 31, 1948 in the respective amounts of $14,653.62, $10,055.55, and $15,786.31. Petitioner's wife, Mary Crockett Peebles, owed $1,000 to her aunt as of December 31, 1947, and she owed $5,000 on a note payable to her aunt. Both of these obligations were gratuitously canceled in 1948, and the cancellations did not result in taxable income. Petitioner, in 1947 and 1948, kept no ledgers, general journals, or any books to record expenditures made in those years. He did have two books on hand which appeared to be books of original entry but they were incomplete and generally incomprehensible. A part of the deficiency for each of the years 1947 and 1948 was due to negligence. Petitioner failed to make and file a return for the year 1947 and such failure was due to willful neglect. Opinion MULRONEY, Judge: The main issue is whether the various parcels of real estate sold by the petitioner in 1947, 1948, and 1949 were held by him primarily for sale to customers in the ordinary course of his trade or business within *156 the meaning of sections 117(a)(1) and 117(j) of the 1939 Internal Revenue Code. If the property was so held by the petitioner, the gain realized by him is ordinary income, as the respondent determined. Petitioner argues that the property involved was not held by him primarily for sale to customers in the ordinary course of his business and that consequently the gains realized are long-term capital gains. The issue is essentially one of fact. D. L. Phillips, 24 T.C. 435. In dealing with this question we have recognized several helpful tests, such as the frequency of sales, the purpose for which the property was acquired, the activity of the taxpayer, or his agent, in connection with the real estate sales, the nature and extent of the taxpayer's business, and the extent of improvements made to the property sold. No single test is decisive. Milton S. Yunker & Leonna S. Yunker, 26 T.C. - (Apr. 26, 1956); Walter R. Crabtree, 20 T.C. 841, 846. A test of perhaps the greatest importance, as indicated by this Court, is the purpose for which the property was held during the period in question. Walter R. Crabtree, supra; Carl Marks & Co., 12 T.C. 1196. *157 Petitioner purchased 3.6116 acres undeveloped land in the District of Columbia in 1936 with the idea of establishing a permanent site for his chemical business. Petitioner graded this property to make it more suitable for his plant. However, in 1941 the petitioner moved his chemical plant to a tract of property in Kenilworth, Maryland, which he had purchased in that same year for just that purpose, and the petitioner made it clear that he regarded this as a permanent site. In 1943 the petitioner purchased an additional tract of undeveloped land adjacent to and north of the original tract in the District of Columbia purchased in 1936. It was the purpose of this second purchase to make the original tract more attractive commercially by providing a wider right of way to and from such property. Petitioner also made other sporadic purchases of various parcels and lots of undeveloped property in this immediate vicinity in the years 1943 through 1947 to enhance the attractiveness of the property already purchased. Some time after 1941, after the petitioner had abandoned all plans to use this property as a site for the chemical plant, he graded some of the streets in this area. In 1947 he *158 constructed a railroad siding on one of the parcels of property. The entire property was suitable for industrial purposes. In 1943 petitioner sold 2.2591 acres for $15,000, and in 1946 he sold approximately 19,000 square feet for $7,406.82. In 1947 and 1948 he sold most of the remaining parcels of undeveloped property in six separate transactions to various purchasers, with gross receipts of $30,751.87 in 1947 and $51,367.92 in 1948. From all the evidence we conclude that the property in the District of Columbia was held by the petitioner in the years here involved primarily for sale in the ordinary course of a business. We do not think that the sales here were casual and isolated, but instead, had a regularity which constitutes the operation of a business. It is true that petitioner did not advertise this property for sale or engage the services of real estate agents. However, such advertising activity, which is only one of several factors to be considered, was not necessary in this case. Petitioner testified that from time to time prospective customers were referred to him by officers of the Pennsylvania Railroad. Also, the petitioner did not find any difficulty in disposing of *159 most of this property over a period of two years. We think the absence of advertising was immaterial since it appears that it was known that petitioner's industrial property was for sale. C. E. Mauldin, 16 T.C. 698, affd. 195 Fed. (2d) 714. It is significant that the petitioner, after he had abandoned, in 1941, his original plan to locate a chemical plant on the property purchased in 1936, proceeded to make a series of additional purchases of undeveloped property in the immediate area to enhance the desirability of property already purchased and then sought to make the property generally attractive for industrial purposes by grading streets and building railroad sidings. Activity of this type on the part of the petitioner points away from a passive liquidation of property. See Frieda E. J. Farley, 7 T.C. 198. Nor do we think that petitioner made these purchases of property in the District of Columbia for purposes of investment. It appears to us that the rapidity with which the real estate in this area was sold by the petitioner within a few years after he bought it indicates a plan to deal in undeveloped land that could be used for industrial *160 purposes. Curtis Co., 23 T.C. 740, revd. on other issue 232 Fed. (2d) 167 (Mar. 30, 1956). We hold that the District of Columbia property was held by the petitioner in the years before us primarily for sale to customers in the ordinary course of a business and that the gains realized by petitioner in such sales are taxable as ordinary income. In 1941 the petitioner located his chemical plant on a portion of the 38 acres of undeveloped land he purchased in Kenilworth, Maryland, in that same year. In 1946 the petitioner subdivided a portion of this property into parcels and dedicated streets in the subdivision to the county for public use. The subdivided portion was known as the Peebles Addition. There were railroad sidings on this property and it was generally available for industrial purposes. In 1947 petitioner sold parcels G and H in Peebles Addition for $23,955.10, and in 1948 he sold parcel J located there for $17,631.20. In 1947 the petitioner purchased approximately 79 acres of land, called Beaver Heights, in the general vicinity of the Kenilworth property, and at the time of the purchase petitioner knew that a proposed express highway was to go within *161 a half mile of Beaver Heights. About 60 acres of this tract was unsubdivided land, with the remaining portion subdivided in lots. On the same day of the purchase the petitioner sold a single lot in Beaver Heights for $3,496.15. In 1948 he sold 15 undeveloped lots in one transaction for $28,208.50, and in 1949 he made sales of real estate in four separate transactions, amounting to $76,500, from both the subdivided and unsubdivided portions of Beaver Heights. We conclude from all the evidence that the petitioner held the property known as Beaver Heights and Peebles Addition in the years 1947, 1948, and 1949 primarily for sale to customers in the ordinary course of a business. We cannot ignore the fact that petitioner paid a commission in 1949 of $1,750 in connection with the sale, in one transaction, of 58 undeveloped lots in Beaver Heights. One of the sales of a lot in 1947 was made the same day of the purchase of the property. Petitioner subdivided a portion of Peebles Addition into parcels and dedicated streets in that general area for public use. These activities indicate that petitioner was desirous of making the property attractive for sale in the years involved here. Nor can *162 we ignore the substantial amounts involved in petitioner's sales. It is true that the petitioner advertised that he had industrial property for leasing purposes in the Kenilworth area, and he did enter into several leases of industrial property. However, this is not inconsistent with a desire to sell property in this area, especially since it appears from the evidence that some of the parcels leased were eventually sold to various tenants in the years here involved. Compared to the petitioner's sales activity we cannot regard the leasing of several parcels of property by the petitioner as anything more than an incidental activity. See Alice E. Cohn, 21 T.C. 90, affd. 226 Fed. (2d) 22. Petitioner also argues that he purchased the Beaver Heights property to go into the sand business. However, from all the evidence, it is apparent that whatever petitioner's plans were about engaging in the sand business, they certainly did not materialize in the years involved here. We can only decide from what the petitioner actually did with this property in the years 1947, 1948, and 1949. Petitioner also makes the argument that he purchased the Beaver Heights property in *163 1947 to protect his chemical plant, located nearby, from the complaints of nearby residents. Even if this argument has some merit as bearing upon the purpose for the original acquisition of the property, it loses its force in view of the evidence that the petitioner, in 1949, sold from the Beaver Heights property 18 acres of unsubdivided land in one transaction and 58 undeveloped lots in another transaction to purchasers who intended, with the knowledge of the petitioner, to construct a housing project (on the 18 acres) and an apartment house development (on the 58 lots). Petitioner also produced several witnesses who testified that they were unable to buy property from the petitioner. Three of these witnesses testified as to years subsequent to 1949, and consequently do not show petitioner's intent with regard to the property during the years before us. One of the witnesses who so testified, Eaton, ultimately bought the property in 1948 which he had previously sought from petitioner. Moreover, as we pointed out in a prior case, "it may not be said that a rejection of some offers and the resulting holding of the lot or lots in question for better sale is, in and of itself, antagonistic *164 to the conduct of a real estate business." C. E. Mauldin, supra.We hold that the property, known as Beaver Heights and Peebles Addition, was held by the petitioner in the years here involved primarily for sale to customers in the ordinary course of his business and that gains realized from such sales are taxable as ordinary income. Petitioner also sold, in 1948, a parcel of real estate listed as "Land - north of Landover Road", and his own testimony reveals that he made an active effort to sell this particular parcel in that year. He first approached (in 1948) the owner of adjoining land, who was not interested in buying, and subsequently the petitioner found another buyer. We conclude that this property was held by the petitioner in 1948 primarily for sale to customers in the ordinary course of business and that the gain realized from the sale of such property was taxable as ordinary income. The petitioner disputes certain items used in respondent's net worth computation. These items are as follows: Jan. 1, 1947
Dec. 31, 1947
Dec. 31, 1948
Accounts Receivable
$14,653.62
$ 10,055.55
$15,786.31
Accounts Payable
11,678.94
Notes Payable
270,961.52
Loan from Aunt
5,000.00
*165 No evidence has been introduced by the petitioner sufficient to carry his burden of proof that the accounts receivable amounts as used by the respondent in the net worth computations are incorrect, and we hold that such amounts are correct as used by the respondent. Petitioner argues that a $1,000 loan was outstanding to Mary Crocket Peebles' mother since 1941 and that it was forgiven in 1948, and that effect should be given to this in the net worth computation. We are convinced that this obligation was so canceled in 1948. However, no different results would arise even if this amount were considered in the computation. The liability shown for the petitioner at the beginning and at the end of 1947 would be increased by $1,000, which would cause no change in the net worth increase for 1947. If the debt were canceled in 1948, again there would be no change in the net worth as of December 31, 1948 since this particular liability was not included by the respondent anywhere on the net worth statement. If the $1,000 item were included in accounts payable in 1947 and then eliminated at the end of 1948, it would result in an increase in net worth for 1948 of $1,000 more than the figure shown *166 on the respondent's computation, but this increase for 1948 would be reduced in a like amount since the cancellation of this debt was a gift and therefore not taxable income. Petitioner also argues that his income for the year 1948 should be reduced by the amount of $5,000 which was a note obligation outstanding as of December 31, 1947, but which was owed to an aunt of Mary Crockett Peebles, canceled in the aunt's will in 1948. Respondent admits this note was outstanding on December 31, 1947. Even if this amount were properly included in notes payable as of the end of 1947 and then eliminated in 1948, as petitioner claims, it would leave undisturbed the increases in net worth for 1947 and 1948 determined by the respondent in his computation for those years. We hold that petitioner had two obligations of $1,000 and $5,000 outstanding on December 31, 1947, and that both obligation. were eliminated in 1948. But there is no change in the net worth increases for the years 1947 and 1948 by reason of these items, and we fail to understand how petitioner contends otherwise. Petitioner, in his original and supplemental brief, raises an issue for the first time of a deduction in 1949 for *167 the amortization of a commission paid by the petitioner to secure a loan. To place an issue properly before this Court, such issue must be raised in the pleadings or in an amendment to the pleadings. Estate of William Beale Hibbs, 16 T.C. 535; Samuel J. Rissman, 6 T.C. 1105. Petitioner did not properly raise this issue and we are not called upon to decide it. Petitioner and his wife, for the year 1947, each filed an incomplete form 1040 which indicated on its face that it was "not a complete return." It showed merely the amount of $350 as income tax due, with no further information. A return with absolutely no information on it except for an arbitrary amount labeled as tax due cannot be regarded as a "return" within the meaning of section 291(a). The only explanation presented, on the face of the returns, was that "1947 was a complicated year * * * and as yet we do not know exactly what we owe." There is nothing in the record to show that the petitioner exercised ordinary business care and prudence in making an effort to file a timely return. Nathan Blum, 5 T.C. 702, 712. We have found as a fact that the failure to file a return was not due *168 to reasonable cause but to wilful neglect, and we hold that the addition for delinquency under section 291(a) was properly determined by the respondent in Docket Nos. 50674 and 50675. Respondent imposed the 5 per cent addition to tax for the years 1947 and 1948 under section 293(a) of the 1939 Internal Revenue Code. [2] Petitioner's books and records in 1947 and 1948 were of no value in determining the extent of his operations. There were no ledgers, general journals, or any books to show expenditures made. There did exist one or two books which appeared to be books of original entry, but they were incomprehensible. We have found as a fact that a part of the deficiency for each of the years 1947 and 1948 (Docket Nos. 50674, 50675, and 50676) was due to negligence, and we hold that the respondent was correct in adding the 5 per cent addition to tax to the deficiencies determined by him for those years. *169 It developed at the hearing that an asset known as "Land - north of Landover Road" was owned by petitioner and his wife on December 31, 1947. As a result of this development, the respondent, by proper amendment of his pleadings, made a timely claim for an increased deficiency and additions to tax under sections 291(a) and 293(a) of the 1939 Internal Revenue Code for the year 1947 in Docket Nos. 50674 and 50675. Robert A. Henningsen, 26 T.C. - (June 13, 1956). See also section 272(e) of the 1939 Internal Revenue Code and Rule 17 of the Tax Court Rules of Practice. A resultant decrease in deficiency and additions to tax for the year 1948, arising from this same development, will be given effect in the Rule 50 computation. Decisions will be entered under Rule 50. Footnotes
1. The following proceedings are consolidated herewith: Mary Crockett Peebles, Docket No. 50675; David Meade Peebles and Mary Crockett Peebles, Docket No. 50676; and David Meade Peebles and Mary C. Peebles, Docket No. 59422.↩
*. It was conceded during the hearing that an asset owned by the petitioner and designated as "Land - north of Landover Road", with a cost of $2,057.20, was owned by petitioner as of December 31, 1947. As a result of this concession the real estate item, as of this date, in the net worth computation is increased from $320,042.74 to $322,099.94 which increased the net income figure in the computation for 1947 to $29,685.17 and decreased the net income for 1948 to $52,758.49.↩
2. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. (a) Negligence. - If any part of any deflciency is due to negligence, or intentional disregard of rules and regulations but without intent to defraud, 5 per centum of the total amount of the deficiency (in addition to such deficiency) shall be assessed, collected, and paid in the same manner as if it were a deficiency, except that the provisions of section 272(i), relating to the prorating of a deficiency, and of section 292, relating to interest on deficiencies, shall not be applicable.↩