E. Aldine LAKIN, J. Lee Mullendore and Cecil M. Mullendore, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 7513.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 18, 1957.

Decided Nov. 25, 1957.

782

John S. McDaniel, Jr., Baltimore, Md. (Cable & McDaniel, John W. Cable, III, and Mannes F. Greenberg, Baltimore, Md., on brief), for petitioners.

Davis W. Morton, Jr., Attorney, Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and I. Henry Kutz, Attorneys, Department of Justice, Washington, D. C., on brief), for respondent.

Before PARKER, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

PER CURIAM.

These are petitions to review decisions of the Tax Court. The question involved is whether gains derived by taxpayers from the sale of various parcels of real estate in 1949, 1950 and 1951 are to be treated as ordinary income or as capital gains. The Tax Court, affirming action by the Commissioner, held that the lands thus sold were held by taxpayers primarily for sale to customers in the ordinary course of trade or business within the meaning of 117(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 117(a), and that the gains derived from the sales were taxable as ordinary income. See 28 T.C. 462. The facts are fully stated in the opinion of the Tax Court and need not be repeated here. They were correctly summarized in the Tax Court's opinion as follows:

"The petitioners are the principal stockholders and officers of the Lumber Company, which supplied all the materials for home construction and for equipping a home, except furniture. They were also the principal stockholders and officers of Model Homes, a speculative building company, which was used as an outlet for the products of the Lumber Company. The petitioners, although the lots which they purchased and sold in prior years might have been purchased solely for investment, appear to have embarked upon a different course of action when they formed Model Homes in 1942. Cf. Walter H. Kaltreider, 28 T.C. 121. The record, we think, shows they entered *into business activities having in mind the promotion of their interests in their principal business, the Lumber Company.* From 1942 to 1951, petitioners acquired land which, after subdivision, totaled about 240 lots. The petitioners were Model Homes' principal source of supply. Of the 155 lots purchased by Model Homes from 1942 to 1953, 89 were purchased from petitioners. Of the 132 purchased by Model Homes from 1945 to 1953, 89 were purchased from petitioners. During the years in question about 55 lots

were sold by petitioners, 21 of them being sold to Model Homes.

"The lots sold to third parties were sold on the condition that the purchasers would purchase their building material from the Lumber Company. Also, as stated previously, Model Homes purchased the material for the construction of its homes from the Lumber Company. These facts, we think, clearly show that the petitioners were selling the lots for the purpose, at least in part, of promoting their interests in the Lumber Company. Under these circumstances the sales cannot be said to be the passive liquidation of investment property. On the contrary, their purchase of lots in existing developments and of tracts of land, the subdivision of the tracts, and the sale of lots, when considered in relation to their other activities, constituted a business.

"Although Fairgreen Acres was used as a farm for a short while and although Homeland was purportedly purchased to prevent a contractor from using it for storage space for unsightly heavy equipment that might detract from the Lumber Company's premises, their subsequent subdivision at the instance of Model Homes shows that the purpose for which those properties were held had changed. Cf. Arthur E. Wood, supra. They were being held primarily for sale to customers, including Model Homes, in the ordinary course of their business of promoting their interests in the Lumber Company."

The question involved is a pure question of fact and we cannot say that the decision of the Tax Court with regard thereto was clearly wrong. On the contrary, we think that it was correct. The decision of the Tax Court will accordingly be affirmed on the basis of its opinion in this case and our decision in the recent case of Peebles v. Com'r, 4 Cir., 249 F.2d 92, affirming 15 T.C.M. 801.

Affirmed.