OPINION. Turner, Judge: It is the position of the petitioner that the parcels of real estate sold by Canton during the taxable years were capital assets, within the meaning of section 117 (a) of the Internal Revenue Code of 1939,[7] or assets used in Canton’s trade or business within the meaning of section 117 (j),[8] the gains from the sale of both of which are entitled to capital gains treatment under the statute. Summarized, the arguments supporting the claim that the said parcels of real estate sold were capital assets are (1) that for the purposes of section 117 (a), the selling by Canton of its real estate was a passive liquidation of land held as an investment, and not the sale thereof in the ordinary course of its trade or business, in that the majority of the parcels sold had been owned by Canton for a period of more than 100 years; it did not actually solicit purchasers, did virtually no advertising, maintained no real estate office or personnel, and made very few additional acquisitions of real estate; its sales in any one year were few and its profits were relatively small or insignificant when compared to its income from over-all operations; and (2) that since Canton restricted its sales of industrial real estate, so-called, to purchasers which it thought would be freight producers for Canton Eailroad, and not to the public at large, namely, any person willing to pay Canton’s price, the purchasers thereof were not customers within the meaning of the statute, and it may not properly be said that the parcels were held primarily for sale, or sold, to customers in the ordinary course of Canton’s trade or business. The claim that certain of the parcels sold during the taxable years were assets used in Canton’s trade or business within the meaning of section 117 (j) relates to the parcels which were rented at the dates of their sale. That Canton was engaged in the business of selling real estate to customers in the ordinary course of its operations, is, we think, abundantly clear from the evidence and the facts found therefrom. And it is our opinion that the result is not made otherwise by the fact that Canton had owned most of the land sold during the taxable years for the more than 100 years of its existence, that it did or did not in the interim make numerous other acquisitions of real estate, that when compared with its other operations its selling of real estate and the profits therefrom were relatively small, or that in its organization and its methods of operation it was and is not the counterpart of the usual real estate development or brokerage business. Canton, immediately and shortly after its organization, acquired and became the owner of a very extensive land acreage, all of which it was thought would in time become a part of the city and port of Baltimore. It was the purpose and intention of its organizers that some of its operations would cover the development of parts of the land for the holding and continued use thereof, either through direct operation or rental. It is equally clear that other parts of the land so acquired, and in fact the major part, insofar as area is concerned, should be held primarily for sale and marketed by Canton over the years and in the course of its operation and that it would conduct its operations to the end stated in the manner which in the judgment of its operating officers would make of the operations and business a sound and profitable one for the years to come. The facts, in our opinion, show that it has done just that. From the beginning, it has regularly and continuously been engaged in developing portions of its property for continued holding and use and in marketing other portions. By announcement, advertising, and other dissemination' of information, in a manner which would reach prospective buyers, it has regularly held itself out as having real estate for sale both for industrial and residential purposes. It has planned and conducted its activities in such manner as to keep its real estate selling operations on a sound and profitable basis. Where the filling out of a particular parcel held for sale would make it more attractive to a prospective purchaser, it has made additional acquisitions of property to that end. It has also studied and planned the sales of its holdings, having due regard for the uses to which the land held for sale and sold could be best adapted, be the use industrial or residential. When offering a certain area for sale for residential purposes, it has at times laid out and graded streets. In short, the evidence shows, we think, that the selling of real estate has regularly and consistently been an integral part of Canton’s business and that the sales herein were to customers in the ordinary course thereof. The sales were not those of a passive investor. We are also of the view that the sales of industrial sites were not any the less sales of property to customers in the ordinary course of Canton’s business by reason of the fact that it made such sales only to purchasers which it thought would be freight producers for Canton Railroad. A commonly accepted meaning of the word customer is “a buyer or purchaser,” see Webster’s New International Dictionary. A buyer or purchaser is one without which there is no sale, and the facts not only show that Canton did have purchasers of the land suitable for industrial sites during the taxable years, but through advertising in various publications and other effective methods of disseminating the information that it had desirable industrial sites for sale, it was regularly engaged in locating purchasers for such property. We find nothing in the statute to justify or permit the conclusion or holding that the purchasers herein were not customers within the meaning of the statute merely because Canton made it a practice to restrict its sales of industrial sites to purchasers which it thought and hoped would thereafter bring to it further and other profits as customers of Canton Railroad. Actually, the fact that the customers sought for and dealt with were only those which in their subsequent operations might do business with Canton Railroad and thereby bring additional profits to Canton, may well be regarded as further support for our conclusion that the sales in question were, under the statute, sales to customers in the ordinary course of Canton’s business. See and compare E, Aldine Lakin, 28 T. C. 462, affd. 249 F. 2d 781. The basis for the claim that certain of the parcels of land sold during the taxable years were assets used in Canton’s trade or business, within the meaning of section 117 (j), appears to be that Canton’s business in major part was the owning and maintaining of property for the purpose of producing income in the form of rent, and that various of the properties sold during the taxable years having been rented at the time of sale, were assets used, in Canton’s trade or business within the meaning of the statute. The facts show that 13 of the parcels sold were or at sometime during the 10 years preceding their sale had been rented, and in its statement of facts on brief, petitioner has listed all 13 parcels as being section 117 (j) assets. In its argument, however, it lists only 6 parcels as having been rented at the time of sale and it is only these 6 that are now claimed to have been section 117 (j) assets. Four of the 6, as had been true of most of the others of the 13 parcels, were rented at only a nominal rental. With respect to 1 of the 2 parcels remaining, the record does not show whether the rent was nominal or substantial. As to the sixth parcel, which was sold to Revere Copper and Brass, Inc., the facts show that at the time of its sale it was rented to Revere for $1,290.72 per year; that it was adjacent to property previously sold to Revere and on which the business of Revere was located, and that Revere had on its own account placed improvements thereon of undisclosed character and value. As to the 4 properties rented at a nominal rental, there is no showing which would justify any conclusion other than that the renting thereof was purely incidental and not indicative of the primary purpose for which they were held, that they were so rented only pending the time when they would be sold in the course of Canton’s business, and the primary purpose for which they were held was the sale to customers in the ordinary course of such business. See Stockton Harbor Industrial Co. v. Commissioner, 216 F. 2d 638, affirming a Memorandum Opinion of this Court dated April 15, 1952. As to the parcel on which the record is silent, the conclusion must be the same. With respect to the parcel sold to Revere, there could be some question. Aside, however, from the fact that at the time of its sale the said parcel was producing a rental which was somewhat more than nominal in amount, there is no proof to show that the production of rent was the primary purpose for which it was being held. Taking into account, however, the fact that it was Canton’s general purpose to sell in the course of its operations all.of the land which it did not develop and hold for continued use and that Revere, not Canton, was responsible for such improvements as were on the property, we are unable to say that the said parcel was not likewise held primarily for sale to customers in the ordinary course of Canton’s business, rather than for use in its business as rental property. The claim that the said parcel so rented to Revere at the time of sale was a section 117 (j) asset is accordingly rejected. Cohn v. Commissioner, 226 F. 2d 22, affirming 21 T. C. 90; and Greene v. Commissioner, 141 F. 2d 645, affirming a Memorandum Opinion of this Court dated October 31, 1942. The question whether the selling of the property acquired in 1912, pursuant to plans for the extension of the Canton Railroad, was the passive liquidation of property acquired by Canton for use in its business, or the sale thereof to customers in the ordinary course of such business, is likewise a question not to be resolved as a matter of course. Admittedly, the original purpose for acquiring that part of such property as was actually within the proposed right-of-way was not for resale, but for use in Canton’s and Canton Railroad’s business; and, unless after the abandonment of the proposed railroad extension and the decision in 1925 to sell the said property there was such change in the holding and selling thereof as to make the selling a part of Canton’s real estate business, the position of the petitioner would appear to be well taken. Alamo Broadcasting Co., 15 T. C. 534; and Carter-Colton Cigar Co., 9 T. C. 219. Compare Mauldin v. Commissioner, 195 F. 2d 714, affirming 16 T. C. 698. On the record before us, however, we are of the view that this question must likewise be resolved against the petitioner. First, as indicated by our findings of fact, it is not at all clear that all of the so-called right-of-way properties were in fact within the boundaries of the proposed right-of-way and were to have been used as such. Furthermore, such evidence as we do have with respect to the selling of the various parcels of such property tends to support, rather than negative, the conclusion that these properties, along with Canton’s other properties, were primarily held for sale, and were sold, to customers in the ordinary course of its business. Mauldin v. Commissioner, supra. Decisions will be entered for the respondent. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions.. — As used in this chapter— (1) Capital assets. — The term “capital assets” means property held by the taxpayer (whether or not connected with his trade or business), but does not include— (A) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business (B) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1), or real property used in his trade or business; (j) Gains and losses From Involuntary Conversion and From the Sale or Exchange OF CERTAIN PROPERTY USED IN THE TRADE OR BUSINESS.— (1) Definition of property used in the trade or business. — For the purposes of this subsection, the term “property used in the trade or business” means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not * * * (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business * * *