GRACE BROS., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9766. Promulgated January 27, 1948.

*George H. Koster, Esq.,* for the petitioner.
*W. J. McFarland, Esq.,* for the respondent.

OPINION.

JOHNSON, *Judge*: The parties are agreed that petitioner realized a profit of $140,133.58 from the sale transaction with Garrett & Co., but petitioner assails the determination that this amount is taxable as ordinary income, advancing three contentions under which all or a part of such profit should be classed as capital gain and so taxed.

First, it argues that despite the literal language of the sale contract and communications leading up to it, the sale was not of wine merely, but also of the good will of the business. Grace testified that in his preliminary negotiations with Weller he offered to sell all the business and assets for $375,000; that he arrived at this figure by assigning $125,000 to the plant, $150,000 to the stocks of wine, and $100,000 to good will, and that the price obtained for the wine was intended to cover good will. This price was $271,179.91, inclusive of the $52,000 received and reported in 1942. We can not find such an offer upon the evidence adduced. In our opinion the telegrams affirmatively indicate that petitioner did not seek to sell the plant, because, in pressing Garrett & Co. for a decision, Grace wired that he had "several purchasers for our inventory and lease of winery and distillery," while nothing in the interchange of communications even suggests an intention or offer to sell the winery.

In any event the actual transaction, not an unaccepted offer, is determinative of tax incidence, and, even if Grace attempted to sell the plant and business as an entirety, that attempt would not color the lease with the characteristics of a sale. Petitioner cites several cases to the general effect that a profitable business presumptively has good will, *Helvering* v. *Security Savings & Commercial Bank* (C. C. A., 4th Cir.), 72 Fed. (2d) 875; *White & Wells Co.*, 19 B. T. A. 416, and that, when sold in its entirety, a part of the consideration paid is properly attributable to that good will, whether or not the sale contract so specifies. *Pfleghar Hardware Specialty Co.* v. *Blair* (C. C. A., 2d Cir.), 30 Fed. (2d) 614; *Betts* v. *United States*, 62 Ct. Cls. 1. Counsel stresses that in giving possession of the winery petitioner turned over to Garrett & Co. its labels, list of customers, and staff of experienced employees, together with its existing stocks of wine, and we are asked to hold that in so doing it necessarily conveyed the good will of its business.

We should be impressed by this argument if there had been a sale, as in the cited cases, but under the facts here shown the advantages of whatever good will was inherent in petitioner's business passed to Garrett & Co. by lease, not by sale, and there is no controversy about the rental. In making the lease it is true that petitioner sold its entire stock of wines, but a sale of merchandise, particularly of goods that had been held as stock in trade, does not effect a conveyance of the seller's good will. In phrasing his argument, counsel alleges "the transfer of petitioner's entire winery business," including good will of a value of $100,000, and concludes that "therefore $100,000 of the price received from Garrett & Co. should be allocated as the amount received for the said intangible or going-concern value." But "the price received" was explicitly for wine, and we are not convinced by Grace's testimony that the amount of it exceeded the wine's fair market value by $100,000 intended to cover good will. In the preliminary negotiations four different prices per gallon were quoted for four grades of wine, and the transaction was consummated on a compromise price of 50 cents a gallon for all types and later adjusted upward slightly in respect of wines having a high sugar content. This method of price determination is wholly incompatible with the theory that something more than wine was being bought, nor can we believe that Garrett & Co. would have paid $100,000 above market to obtain good will which it abandoned a little over a year later by canceling the lease so that petitioner could sell the winery to Taylor & Co. Significantly, petitioner offered no evidence of the market price of its grades of wine in December 1942, apart from Grace's general testimony that the price paid by Garrett & Co. was excessive by $100,000. We are unable to make such a finding or to hold that the sale contract covered any more than its terms indicate.

Second, petitioner argues that "the transaction with Garrett & Co. involved the disposition of a unitary business as distinguished from particular assets, and therefore the entire profit from the transaction should be treated as a long-term capital gain." For the reasons above stated, we can not accept petitioner's factual premise, and hence the legal arguments based on it become moot. The "transaction" with Garrett & Co., we would point out, was not single, but comprised a sale of wine and barrels and the lease of a winery, and if it could be treated for tax purposes as a unit, the "profit from the transaction" would comprise not only the $140,133.58 gain from the wines delivered in 1943, but also the undisclosed profit from the sale of wine in 1942, from the sale of barrels, and from rents due under the five-year lease which was prematurely terminated. These considerations point up the unsound character of petitioner's contention, for under its own theory the entire proceeds of "the transaction" were not, and by their nature should not have been, reported on its income tax return for 1942.

Third, petitioner contends that because of an intent to liquidate, followed by a "disposition" of the entire business, its wine stocks lost their character as stock in trade or property held for sale to customers in the ordinary course of business and became capital assets within the meaning of section 117 (a) (1), Internal Revenue Code, so that all profit from their sale is taxable as a capital gain, and, since the wine was held over six months (with exception of the 4,959 gallons produced in 1942), as a long term capital gain.

We are unable to agree with the view that Grace's intention to liquidate converted petitioner's stock in trade into capital assets, and we hold here that the wine's character as stock in trade was not lost and did not change by virtue of Grace's decision to discontinue petitioner's wine business and by petitioner's sale of that stock in its entirety.

Petitioner cites *Three States Lumber Co.* v. *Commissioner* (C. C. A., 7th Cir.), 158 Fed. (2d) 61, as to the contrary, but we are of opinion that by implication it strongly supports our conclusion. The taxpayer there terminated its business of cutting, sawing, and selling timber in 1919, and then endeavored to sell its land, but without success until it began to sell parcels on the installment basis after 1930. Rejecting the Commissioner's contention that its profits were taxable as ordinary income, the court held them capital gains because there was no evidence to "support the conclusion that petitioner was engaged in business primarily for the purpose of selling land to customers in the ordinary course of its trade or business." Inferentially, if there had been such evidence, the profits would have been ordinary income, notwithstanding liquidation. *Graham Mill & Elevator Co.* v. *Thomas* (C. C. A., 5th Cir.), 152 Fed. (2d) 564, also cited by petitioner, even more strongly supports that view. The liquidating taxpayer there sold all its assets, including notes and accounts receivable, and on

164

the latter it claimed an ordinary loss deduction. But the Circuit Court of Appeals for the Fifth Circuit held the notes capital assets and the loss a capital loss, because the taxpayer:

> \* \* \* was not in the business of selling notes and accounts, and had never so dealt with its notes and accounts before.
>
> \* \* \* They represented the taxpayer's business capital, but were not a part of his stock in trade.

Under such rationale it is to be inferred that liquidation brought about no change in the assets' classification and that if, as here, the taxpayer's normal stock in trade had been the subject of consideration, the decision would have been the reverse of what it was. We adhere to the view that an intent to discontinue business or to liquidate does not convert stock in trade into a capital asset, and we sustain the Commissioner's determination that petitioner's profit from the sale of wine is taxable as ordinary income.

Petitioner assigned as error the Commissioner's inclusion in 1943 income of a capital gain of $99,002.64 realized from its sale of the winery to Taylor & Co. The parties have stipulated that this sale occurred in 1944, and are agreed that the gain is not taxable in 1943.

On its tax return for 1943 petitioner did not claim and the Commissioner did not allow deduction for $9,385.03 representing the California bank and franchise corporation tax covering the year 1943, but paid in 1944. Petitioner contends that this tax is deductible as accrued in 1943. This issue was decided adversely to petitioner's contention in *Central Investment Corporation*, 9 T. C. 128, and, adhering to that decision, we approve the Commissioner's action.

Reviewed by the Court.

*Decision will be entered under Rule 50.*