*Decision will be entered under Rule 50.*

AUGUST ENGASSER AND EMMA ENGASSER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 59546.   Filed September 19, 1957.

---

*Israel Rumizen, Esq.*, for the petitioners.
*A. Jesse Duke, Jr., Esq.*, for the respondent.

1176

**OPINION.**

BLACK, *Judge:* The sole question involved herein is whether the gain of $44,100 realized by the petitioner in 1952 on the sale of the Amherst property is ordinary income, as determined by the respondent, or long-term capital gain, as returned by the petitioner. The answer depends on whether the property was held by the petitioner primarily for sale to customers in the ordinary course of trade or business. Sec. 117, I. R. C. 1939.

The Amherst property was purchased by petitioner in December 1949.[1] It consisted of about 5½ acres of unimproved land located

---

[1] Three lots included in the Amherst property were purchased in October 1950.

in a desirable residential area of Amherst, New York. Petitioner made no improvements upon the land. Prior to the sale by petitioner, however, the town of Amherst, after a suggestion by the petitioner's attorney, approved the paving and curbing of two streets running through the land. This action enhanced the value of the land. Petitioner sold the land in August 1952 to the corporation. The corporation's stock was held solely by the petitioner (49 per cent), his wife (2 per cent), and his son Charles (49 per cent). The bona fides of this sale is not questioned and the amount of petitioner's gain from it is not in issue.

Petitioner and Charles had, since 1946, engaged in the general contracting and home construction business, conducting that business as an informal partnership until January 1948, as a partnership known as August Engasser & Son from January 1948 until September 1950, and as a corporation known as the Layton-Cornell Corporation after September 1950, including the period in question. Petitioner and his son were equal partners in the partnerships, and petitioner was president of the corporation. Petitioner was frequently ill and Charles handled the affairs of the partnerships and the corporation.

Improved vacant lots were purchased in petitioner's name. The partnerships or corporation would construct a house thereon. During the periods when the partnerships were in existence it appears that petitioner would convey title to the lot to the purchaser. During the periods when the corporation was in existence the petitioner, after the house was completed and sold, would convey title to the lot to the corporation, which would in turn convey title to the purchaser. The partnerships constructed over 50 houses. It also appears that at the time the corporation was organized, about 35 lots were conveyed to it by petitioner.

The record does not show whether the numerous lots purchased in petitioner's name and built on by the partnerships and the corporation were purchased with petitioner's funds and by him and, if so, when they were sold, whether petitioner received any gain thereon, and how it was treated. However, the clear unrebutted inference from the record is that the numerous real estate transactions to which he, the partnerships, and the corporation were a party were more than sufficient to place him individually in the business of buying and selling real estate.

The fact that petitioner did not have a real estate license and that he made no active effort to sell the Amherst property are not significant under the circumstances. Cf. *E. Aldine Lakin*, 28 T. C. 462, on appeal (C. A. 4). While there are some differences in the facts in the instant case from those which were present in the *Lakin* case,

we do not think those differences in facts are sufficient to make the two cases distinguishable. The record shows that petitioner did not need a real estate license to buy and sell on his own account and that the lots were sold by the corporation or partnerships along with the houses built upon them.

In *Walter H. Kaltreider,* 28 T. C. 121, on appeal (C. A. 3), a corporation, the stock of which was held by petitioner and other members of his family, built houses on an acreage which was owned by, and subdivided by, the taxpayers. The lots and the houses built thereon were sold by the corporation for a lump sum. A part of the purchase price was allocated to the houses and the remainder to the lots. The amount allocated to the houses (less cost of houses sold) was returned as ordinary income and the amount allocated to the lots (less the basis of the lots) was returned as capital gain. We held that "whatever was done here by the corporation was done at the instance and for the benefit of the petitioners as their agent," and that the taxpayers were in the real estate business. The factual pattern here is similar to that in the *Kaltreider* case, *supra,* and we think that here, as there, the petitioners were engaged in the real estate business.

Petitioner also argues that the Amherst property was held for investment and not for sale. He seeks to distinguish the Amherst property from the other properties. He contends (1) that the Amherst property was unimproved vacant acreage while the other properties were improved vacant lots, and (2) that the Amherst property was sold prior to any houses being built thereon while the other properties were never sold until after the houses had been built on them.

We see no merit in either of these distinctions. The record clearly shows that the Amherst property was purchased, as were all of the other properties, with the intent and purpose of constructing houses for sale thereon. That purpose did not change except that in regard to this property the corporation planned to build houses thereon subsequent, rather than prior, to its acquiring the land. Also the record shows that the other acreage which petitioner had purchased prior to the Amherst property was, as late as July 22, 1954, being held for the purpose of constructing houses thereon.

The question here is essentially one of facts that must be determined from the entire record. After considering the facts and circumstances present we have concluded and found as a fact that the property in question was held primarily for sale to customers in the ordinary course of trade or business. The gain on its sale, therefore, is ordinary income. Accordingly,

*Decision will be entered for the respondent.*