**H-H RANCH, INC., an Illinois corporation, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 15335.

United States Court of Appeals Seventh Circuit.

March 16, 1966.

Richard Weinberger, Chicago, Ill., for petitioner.

Richard M. Roberts, Asst. Atty. Gen., Tax Division, Stephen H. Paley, Lee A. Jackson, Harold C. Wilkenfeld, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before SCHNACKENBERG, KNOCH and KILEY, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

H-H Ranch, Inc., an Illinois corporation, petitioner (taxpayer), seeks review of a decision of the Tax Court of the United States, which decided that there is a deficiency in federal income tax due from taxpayer for the taxable years 1958 and 1959 amounting to $7,586.37 and $15,568.91, respectively.

The decision of the Tax Court is based upon its findings, the essentials of which, in summary, follow.

All of taxpayer's stock outstanding is held by William W. Heise, Sr., his wife Marjorie, and two sons, William W. Heise, Jr., and Theodore Heise. During the taxable years the corporation officers were the father, as president, and Marjorie (also known by her maiden name of M. I. Brain), as secretary.

Taxpayer acquired the Elgin Farm on June 30, 1950 from Heise, Sr., and wife, in exchange for its common stock.

Heise, Sr. had been in the building business since 1914. In 1959, the father and mother owned all the authorized capital stock of Blackhawk Builders (Blackhawk), an Illinois corporation, formed in 1941. She was president and he was vice-president thereof. Its business had been the building and selling of houses to the public. It was used as the father's "building corporation" from 1950 through 1959.

Heise Brothers Realty, Inc., an Illinois corporation, engaged in the sale of real estate. At the time of the trial, its sole stockholders were the same as those of taxpayer.

In January 1953, Blackhawk acquired from taxpayer about 22 acres of the Elgin Farm and subdivided it into 77 lots designated as Blackhawk Manor Subdivision.

In 1954 and again in 1956, taxpayer conveyed more of the Elgin Farm acreage to Blackhawk which had completed buildings on said 77 lots.

On September 27, 1957, taxpayer contracted with Blackhawk to sell real estate, which corresponds to the Third Addition to Blackhawk Manor, for $2,000 per lot. The property was so conveyed.

The agreement provided in part that any lots remaining unsold or unpaid for by Blackhawk after five years should be reconveyed to taxpayer, clear of all encumbrances.

Taxpayer did not report in its return for 1957 any profit from the sale of real estate constituting the Third Addition to Blackhawk Manor, although it did report as income the amount received from a sale of real estate to the Illinois Tollroad Commission.

The Tax Court received in evidence the books of account of taxpayer for the years 1958 and 1959, showing relevant transactions pertaining to the real estate above referred to.

Taxpayer suffered losses from farming during the taxable years of 1951 through 1959 with the exception of 1955 when it showed a profit of $85.89. A net farming loss for said entire period amounted to $48,528.14.

Taxpayer realized from the sale of real estate during the years 1953–59 inclusive total net gains aggregating $292,006.54. It had no loss from the sale of its real estate from 1951 through 1959.

The only real estate in taxpayer's Elgin Farm property which it has continued to own is a small area designated as "Proposed Shopping Center."

Taxpayer's books reflect the dates money was received from Blackhawk as a result of the latter's sales of lots to third parties. The gains from the sale of land in the Third and Fourth Additions to Blackhawk Manor were not reported on taxpayer's return for 1957 nor recorded in its books for that year as gains from the sale of such land. Gains from the sale of land from said Third and Fourth Additions were recorded on taxpayer's books and reported on its returns for the years 1958 and 1959. Its balance sheets for 1957 and 1958 disclose no notes and accounts receivable and no accounts payable. During the years 1957 to 1959 inclusive no entries were made in taxpayer's account entitled "Accrued Real Estate Taxes".

The Tax Court followed these findings with what it described as "ultimate findings", as follows:

"During the years at issue, in addition to the business of farming, petitioner was engaged in the business of subdividing real property into improved lots and selling such lots to customers.

"The lots under discussion were held by petitioner primarily for sale to customers in the ordinary course of petitioner's trade or business.

"The income from the sale of these lots was properly reportable by petitioner for the years 1958 and 1959."

The Tax Court thereafter held that taxpayer as principal, during 1958 and 1959, was engaged in the business, through Blackhawk as its agent, "of subdividing, improving, and selling parcels of Elgin Farm as lots to its customers and that its gains therefrom must be treated as ordinary income."

■ 1. Taxpayer contends in this court that it and Blackhawk are separate legal entities each engaged in a separate business, and there is no legal basis for attributing to it the activities of its vendee, Blackhawk. However, we hold that the record supports the findings of the Tax Court, under rule 28 U.S.C.A. rule 52(a). We further hold that the Tax Court correctly held that taxpayer was not entitled to treat a gain from the sales of the land in question as capital gain, because the undisputed evidence in the record shows that taxpayer held this land primarily for sale to customers in the ordinary course of its business. 26 U.S.C.A. § 1231(b) (1) (B). We are not diverted from applying this well-established principle of law by the fact that taxpayer used Blackhawk, another corporation, as its agent.

■ 2. Taxpayer, in attempting to secure a reversal of the decision of the Tax Court urges that the Commissioner's answer filed in that court did not disclose any contention that Blackhawk was the agent of taxpayer. In the setting of this case, this is really a contention that the Tax Court was precluded from deciding the case on the agency theory because it was not specifically stated in the Commissioner's answer. However, if the notice of deficiency and the answer left petitioner in the dark as to what theory it was required to meet at a trial, it had a remedy under rule 17 of the Rules of Practice of the Tax Court.[1]

I. Such a motion has as one of its purposes the affording of information to a party and as an aid in removing the element of surprise in the proceeding.

Moreover, we are informed by the brief of the Commissioner in this court, that, prior to oral argument here, the merits of the agency theory were fully discussed by taxpayer in its brief and reply brief filed in the Tax Court and evidence was produced at the trial on which the Tax Court could base its decision on that theory.

For these reasons the decision of the Tax Court is affirmed.

Decision affirmed.