OPINION Baum, Judge: In 1963 petitioner realized an aggregate gain of $71,636.31 in respect of his 1959 assignments of his interests in the Emmons and Anderson properties to his controlled corporation, the Boyce Brown Development Co., and he challenges the Commissioner’s classification of such gain as ordinary income rather than capital gain. The issue is whether such interests are excluded from the term “capital assets” because they represented “property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business” within the meaning of section 1221,1.B.C. 1954.[3] We set forth at the outset several preliminary guides. Whether petitioner held the property “primarily” for the purpose stated in the statute depends upon whether he held it “principally” for such purpose. Malat v. Riddell, 383 U.S. 569, 572. But since the capital gains provision represents “an exception from the normal tax requirements of the Internal Bevenue Code, the definition of a capital asset must be narrowly applied and its exclusions interpreted broadly” in order “to effectuate the basic congressional purpose.” Corn Products Co. v. Commissioner, 350 U.S. 46, 52; Commissioner v. P. G. Lake, Inc., 356 U.S. 260, 265; Kaltreider v. Commissioner, 255 F. 2d 833, 838 (C.A. 3). Moreover, the issue is entirely factual, the transaction must be examined in the light of all the surrounding circumstances, and no one circumstance or factor is controlling. Bauschard v. Commissioner, 279 F. 2d 115, 117-118 (C.A. 6); Tibbals v. United States, 362 F. 2d 266, 268 (Ct. Cl.); Browne v. United States, 356 F. 2d 546 (Ct. Cl.); Kaltreider v. Commissioner, 255 F. 2d at 838; S. C. Bynum, 46 T.C. 295, 299; Ralph J. Oace, 39 T.C. 743,747. Bearing the foregoing considerations in mind, we have reached the conclusion that petitioner did hold the properties in issue principally for sale to customers in the ordinary course of his business, and we reject his contention that he held them merely for “investment.” As background, we start with the fact that petitioner for some years prior to 1958 had been engaged in the business of buying developed lots, building houses thereon, and selling the lots and houses. In 1957 he organized two corporations, wholly owned by himself and his wife, and, as the officer who dominated the affairs of these corporations, he continued such activities after 1958 in corporate form. To be sure, he had never theretofore acquired raw land for subdivision and development purposes. But it is clear to us that beginning in 1958 he expanded his real estate business to include this closely related activity. We recognize, of course, that a taxpayer may select the corporate form as the means for carrying on a business, and that the business of the corporation is ordinarily not to be attributed to that of its shareholders. Cf. Burnet v. Clark, 287 U.S. 410; Whipple v. Commissioner, 373 U.S. 193. But we are satisfied on the record before us that petitioner as an individual acquired and held the Emmons and Anderson tracts for subdivision and sale. The language of the contracts of sale as well as of the trust agreements speak too loudly and insistently in this connection to be ignored. Thus, the contract of sale with respect to the Emmons tract provided that the property “shall be platted and divided into lots and blocks to provide for building sites.” (Emphasis supplied.) And the trust agreement relating thereto recites that “it is the desire of Buyer Trustor [petitioner] to subdivide said property for residence and/or business purposes.” The corresponding instruments relating to the Anderson tract contain similar language. Moreover, it was petitioner, as an individual, who initiated the platting of the Emmons property and who had estimates made by the Hughes Engineering Co. with respect to the cost of developing the property even 'before the Development Co. came into existence. Further evidence of the purpose for which petitioner held the property is the fact that he submitted a personal financial statement dated December 31, 1958, to American, the lender of funds to develop the Emmons and Anderson properties, showing as an asset “Cash Invested in Land for Building Purposes” in the amount of $47,150. We are fully aware that petitioner testified that he purchased these properties only for “investment,” [4] and that he disavowed, at least inferentially, the foregoing language in the contracts and trust agreements, which he attributed to his lawyer. In addition, his lawyer gave testimony which tended to corroborate petitioner’s testimony. But the short answer is that we did not find petitioner’s self-serving testimony or that of his lawyer convincing in this respect. We are satisfied on this record, taking into account not only the facts relating to the Emmons and Anderson tracts but also the facts showing a like pattern in respect of several other tracts, that petitioner, as an individual, had entered upon the business of acquiring land for the purpose of subdivision and sale, and that it is a matter of no consequence that he realized his profit through sales to a controlled corporation. The following cases, while not precisely dispositive of the present controversy, reached a like result in a variety of somewhat similar factual situations. Tibbals v. United States, 362 F. 2d 266 (Ct. Cl); Burgher v. Campbell, 244 F. 2d 863 (C.A. 5) ; Browne v. United States, 356 F. 2d 546 (Ct. Cl.); Kaltreider v. Commissioner, 255 F. 2d 833 (C.A. 3); Bausehard v. Commissioner, 279 F. 2d 115, 118 (C.A. 6); August Engasser, 28 T.C. 1173. In Burgher v. Campbell, supra, the court explicitly stated that it was not “decisive that the customer to which [the tract] was sold was a wholly owned corporation.” 244 F. 2d at 864-865. We note also the statement in that opinion that “The trial court was not required to accept the theory advanced by the taxpayer that this particular property for these particular years was held for investment rather than for sale when it was actually sold so soon [2 years] after its acquisition.” 244 F. 2d at 865. Although we hold against petitioner for the reasons stated above, this case could be decided upon even broader lines that were indicated in Tibbals v. United States, 362 F. 2d 266. There the taxpayer who had been carrying on a business of constructing and selling houses organized several corporations for the purpose of carrying on these activities. He and his brother jointly purchased a tract of land previously subdivided into lots, and after holding the property for more than 6 months, they sold a number of the lots to controlled corporations at a substantial profit. In holding that the gains were taxable as ordinary income, the Court of Claims took into account the nature of the activities of the controlled corporations as well as the taxpayer’s personal participation in their affairs. We quote at length from its opinion (362 F. 2d at 271-272) : In all of these respects, the sales to Cozy Cottages, Inc. and to the Development Company are remarkably close to the sale by stockholders to their controlled corporation, the profits from which we recently held in Brown [sic] v. United States, supra, 356 F. 2d at 547, 174 Ct. Cl. at -, to be taxable as ordinary income. The plaintiffs background is similar to that of the taxpayers in Browne and his dealings with the property were quite comparable. As in that case, “here, we have substantial personal development activities, plus use of and sale to a controlled corporation which continued the development, plus some comparable purchases by taxpayer[s] of other real estate for development.” 356 F. 2d at 547, 174 Ct. Cl. at -. These elements add up to an acquisition, holding and sale primarily in the ordinary course of a real estate business carried on by plaintiff in his individual capacity, with the aid of his controlled corporations. See, also, Engasser, v. Commissioner, 28 T.C. 1173 (1957).[9] To reach this conclusion we do not disregard corporate entities or say that the business of plaintiff’s wholly-owned companies was automatically his business. It is established that, in determining the trade or business of an individual taxpayer, the business activities of his closely-held corporation will not be attributed to him (see, e.g., Whipple v. Commissioner of Internal Revenue, 373 U.S. 193, 83 S. Ct. 1168, 10 L. Ed. 2d 288 (1963)), but.it is also true that a taxpayer may be individually in the same business as his corporation, may make that business his own, or may utilize the company in his own business. It is therefore appropriate, in circumstances such as these, to see whether the taxpayer uses his controlled company — for instance, as agent, co-participant, or joint ven-turer — to implement or further his own personal business, as he easily can.[10] That .type of inquiry has often been made by the courts, including this one, in cases testing (under § 117(a) of the 1939 Code or §1221 of the 1954 Code) whether profit from a sale of property was ordinary income or capital gain. See Boeing v. United States, supra, 168 F. Supp. at 767-769, 144 Ct. Cl. at 84-87; Browne v. United States, supra; Burgher v. Campbell, supra, 244 F. 2d at 864-865; Lakin v. Commissioner of Internal Revenue, 249 F. 2d 781 (C.A. 4, 1957) ; Kaltreider v. Commissioner of Internal Revenue, 255 F. 2d 833, 836, 837, 838-839 (C.A. 3, 1958) ; Bauschard v. Commissioner of Internal Revenue, 279 P. 2d 115, 118 (C.A. 6, 1960) (individual joint venturer) ; Heebner v. Commissioner of Internal Revenue, 280 P. 2d 228 (C.A. 3, 1960), cert, denied, 364 U.S. 921, 81 S. Ct. 285, 5 L. Ed. 2d 260; Patterson v. Belcher, 302 P. 2d 289, 294, 297 (C.A. 5,1962), cert. denied, 371 U.S. 921, 83 S. Ct. 289, 9 L. Ed. 2d 230; H-H Ranch, Inc. v. Commissioner of Internal Revenue, 357 P. 2d 885 (C.A. 7, 1966) ; Engasser v. Commissioner, supra, 28 T.C. 1173. That is what we do in this case, and why we consider it proper to take account of the nature and activities of the controlled companies, Cozy Cottages, Inc. and tlie Arlington Ridge Development Company, in deciding tliat plaintiff’s sales to them brought Mm ordinary income rather than capital gain. Petitioner relies heavily upon Ralph E. Gordy, 36 T.C. 855, acq. 1964-1 C.B. 4. But as we indicated above, cases in this field turn upon their particular facts, and we do not find Gordy controlling, even though there is a superficial resemblance to the case before us. There the taxpayer acquired an option to purchase a tract of land on a lot-by-lot basis, and later sold the option to a controlled corporation. He also purchased another tract to be used as a dogracing track, not for subdivision or sale. Upon failure of local authorities to legalize dog-racing, the taxpayer sold the land to a controlled corporation for development. The Court found that these two transactions were “isolated” and held that neither property was held for sale to customers in the taxpayer’s trade or business. That case is not controlling here for a least several reasons. We mention two of them. In the first place, petitioner herein actually entered into contracts to purchase the Emmons and Anderson tracts with the clear intention of subdividing and developing the properties, whereas in Gordy the taxpayer had a mere option to purchase on a lot-by-lot basis. We reject as unsound petitioner’s contention that his arrangements with the sellers in this case were in substance merely the equivalent of “options.” [5] Secondly, unlike the situation in Gordy, we have concluded here that petitioner was following a pattern of business operation in acquiring land for subdivision and that the transactions before us were not “isolated.” We need not prolong our discussion. The matter is basically one of fact. We have considered the various contentions made by petitioner in the light of the entire record, and we have concluded that petitioner was holding the properties in question primarily for sale to customers in the ordinary course of his trade or business. Decision will he entered for the respondent. SEC. 1221. CAPITAL ASSET DEEINED. For purposes of this subtitle, the term “capital asset” means property held by the taxpayer (whether or not connected with his trade or business), but does not include— (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held l)y the taxpayer primarily for sale to customers in the ordinary course of his trade or tushiess; ⅜ * * [Emphasis supplied.] There is no doubt that a taxpayer in the real estate business may purchase property for investment and if such is in fact his purpose the property will not be deprived of its classification as a capital asset merely because the taxpayer is in the real estate business. Cf. Charles E. Mieg, 32 T.C. 1314, acq. 1960-1 C.B. 5 ; Maddux Construction Co., 54 T.C. 1278 (1970). Cordy v. Commissioner, 36 T.C. 865 (1961), on which plaintiff leans heavily, is distinguished in Browne v. United States, supra. Along with many others, this court has pointed out “that one may conduct his business through others.” Boeing v. United States, 168 F. Supp. 762, 769, 144 Ct. Cl. 75, 87 (1958). Among the considerations pointing to the conclusion that petitioner became the actual purchaser of the property rather than the mere holder of an option to purchase was the provision in the trust agreement placing on him the obligation to pay all taxes falling due on the land.