**J. Ryce MARTIN and Florence K. Martin, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 836.

United States District Court, M. D. Georgia, Valdosta Division.

May 27, 1971.

Edwin G. Barham, Valdosta, Ga., for plaintiffs.

William J. Schloth, U. S. Atty., Macon, Ga., for defendant.

BOOTLE, Chief Judge:

This case is a sequel to Barham v. United States, 301 F.Supp. 43 (M.D.Ga. 1969), aff'd 429 F.2d 40 (5th Cir. 1970). That case, as this one, involved tax treatment of income derived from a real estate investment by a group of entrepreneurs, which group we found in *Barham, supra,* in contemplation of the tax laws of the United States, to be a joint venture. In *Barham,* one of the members of the joint venture unsuccessfully sought to treat income received from the sale of joint venture real estate as capital gains income rather than ordinary income. Here, another member, under somewhat different circumstances, seeks to do the same, claiming that the income derived from the sales here under consideration, unlike the sales involved in *Barham,* was in effect pursuant to a liquidation of his interest in the venture by sale to another member.

In *Barham, supra,* we stated that:

"It is undisputed that the primary business, the only business, of this joint venture was the purchase, development, subdivision into lots and sale of this real estate. It is undisputed that this joint venture held this real estate for the primary purpose of selling it to customers in the ordinary course of its (the joint venture's) business."

The real estate in question consists of two tracts of land developed into residential subdivisions, one being called Dellwood Acres, and the other Hammock Hills. The joint venture purchased the two tracts of land for the purpose of subdividing them into lots and selling the lots to customers. However, the joint venture did not engage actively in this endeavor. All of the development, house building, work and sales involving these two tracts owned by the joint venture was done by plaintiff (a substantial participant in the venture) who was a large house builder doing business through his partnership entitled J. Ryce Martin and Sons (the partnership being a distinct entity from the joint venture, the business purpose of the partnership being house construction). Sales of the lots from the tracts owned by the joint venture were handled by plaintiff through the partnership in conjunction with the partnership's business of constructing houses thereon. The joint venturers shared in the profits from the sale of the lots in proportion to the amount of their investment.

Receipts derived from the building of houses and the sale of lots (including plaintiff's share of the income from the sale of the joint venture lots) constituted plaintiff's major source of income from 1953 to 1964; all gains from which were reported as ordinary income for these years. The purpose of plaintiff in acquiring his interest in the lots in both subdivisions was to develop and sell them in the ordinary course of his lot-developing business; and as we stated in *Barham, supra,* such purpose was likewise the purpose for which the joint venture acquired and held the lots.

In the latter part of 1964, the plaintiff decided to completely retire and give up all business interests, they being with some minor exceptions essentially his interest in the house building partnership and his interest in the joint venture. Plaintiff asserts that at this time his individual intent as regards his interest in the Hammock Hills and Dellwood Acres subdivisions changed as he desired to liquidate his interest so that he could retire. He undertook negotiations with his son Jack Martin, who was the other partner in J. Ryce Martin and Sons and one of the joint venturers who invested in the Hammock Hills and Dellwood Acres subdivisions, for the purchase by the son of the plaintiff's interests in these two business enterprises. The sale was not consummated until July 9, 1965, due to Jack Martin's not having necessary capital with which to make the purchase.[1] During this time plaintiff took no further active part in either business venture. In the interval subsequent to the decision to retire by plaintiff in the latter part of 1964 and the sale of his interests on July 9, 1965, four lots from the two subdivisions were sold by the joint venture.[2]

At no time did the purpose of the joint venture for the holding of these lots change, that purpose being sale to customers in the ordinary course of business; rather only the individual purpose of plaintiff as regards his interest in the venture changed. However, plaintiff's change of purpose in no way affected the purpose of the joint venture in holding the lots in question. On his 1965 income tax return plaintiff reported his profit on this bulk sale of his in-

---

1. Title to his interest in the remaining lots in Hammock Hills was transferred to plaintiff via stock in the dummy corporation which held record title to the lots.

See *Barham, supra.* Title to the Dellwood Acres lots was transferred by deed.

2. The gain on the sale of these four lots was reported as ordinary income.

terest in the lots to his son as subject to capital gains treatment. On audit by the Internal Revenue Service it was determined that the profit should be taxed at ordinary income rates. The plaintiff paid the additional tax and interest occasioned by this adjustment, filed a claim for refund which was denied, and subsequently instituted the present suit. Trial was had before this court without a jury on March 22, 1971.

Essentially plaintiff claims that at the time of the sale in question, he did not hold his interest in the lots with the intent of sale in the ordinary course of his business but, that with his decision to retire he held them until he could liquidate his interests by bulk sale to his son. He claims, therefore, that his interests qualified for treatment as a capital asset, subject to being taxed at capital gains rates rather than at ordinary income rates. Plaintiff urges strongly that as regards his interest in the lots, his change of purpose converted the nature of his interest from property held primarily for sale to customers in ordinary course of business to a "capital asset", the "in bulk" disposal of which is subject to being taxed at the capital gain rate rather than at the ordinary income rate.

Considering the subject matter of the sale as plaintiff's individual interest in the lots, the question here presented for decision is not a new one, several courts having considered it under varying factual situations; all of which are, however, analogous to that which we have here. In Grace Bros., Inc., 10 T.C. 158, aff'd 173 F.2d 170 (9th Cir. 1948), taxpayer sold a "winery" with its entire wine stock. He claimed "that because of an intent to liquidate, followed by a 'disposition' of the entire business, its wine stocks lost their character as stock in trade or property held for sale to customers in the ordinary course of business and became capital assets within the meaning of section 117(a) (1), Internal Revenue Code * * *." That court did not agree. In holding that the gain from the sale of the wine should be treated as ordinary income, the court stated:

"We are unable to agree with the view that Grace's intention to liquidate converted petitioner's stock in trade into capital assets, and we hold here that the wine's character as stock in trade was not lost and did not change by virtue of Grace's decision to discontinue petitioner's wine business and by petitioner's sale of that stock in its entirety * * *. We adhere to the view that an intent to discontinue business or to liquidate does not convert stock in trade into a capital asset * * *." *Grace Bros., Inc., supra* at 163, 164.

In Donald J. Lawrie, 36 T.C. 1117 (1961), taxpayer, a contractor, owned subdivided property from which he sold individual lots in the ordinary course of his business. In 1955, he sold all remaining lots in the subdivision in a single bulk transaction and claimed capital gains treatment on the sale, asserting that he had "liquidated his entire investment." There the court posed the question "Does this mode of disposition change the character of the profit from ordinary income to capital gain?" In answer, the court stated that "precedent in this field calls for a negative answer. Grace Bros., Inc., 10 T.C. 158, affirmed 173 F.2d 170 (C.A.9); August Engasser, 28 T.C. 1173; Cf. Ernest A. Watson, 15 T.C. 800, affirmed 197 F.2d 56 (C.A.9), affirmed 345 U.S. 544, 73 S.Ct. 848, 97 L.Ed. 1232, rehearing denied 345 U.S. 1003." *Lawrie, supra,* 36 T.C. at 1121. The statutory test is whether the property sold was held primarily for sale to customers in the ordinary course of the taxpayer's trade or business * * *. The fact that petitioner disposed of the lots 'in bulk' does not change the manner in which they were 'held' by him, namely, for sale to customers in the ordinary course of his trade or business. *Lawrie, supra* at 1121. See also Estate of Jacques Ferber, 22 T.C. 261 (1954).

Here it is undisputed that prior to 1964 the lots in question were held by

the joint venture and/or the plaintiff as an individual participant therein for sale in the ordinary course of business. We, like the courts in *Grace, supra,* and *Lawrie, supra,* hold that plaintiff's individual change of purpose late in 1964 for holding his interest in the lots did not change the character of the investment so as to entitle plaintiff to capital gains treatment on their disposition. The lots continued to be offered for sale in the course of business of the joint venture, and in fact four were sold following plaintiff's change of intent, profits from which were reported as ordinary income to plaintiff.

Characterization of the sale as a sale of an interest held in a joint venture would not add strength to plaintiff's claim. Under 26 U.S.C. § 741 "In the case of a sale or exchange of an interest in a partnership, gain or loss * * * shall be considered as gain or loss from the sale of exchange of a capital asset, except as otherwise provided in section 751. * * *" (26 U.S.C.A. § 761 "defines the term 'partnership' so as to include a joint venture." *Barham, supra,* 301 F.Supp. at 45). Under section 751, to the extent that the gain or loss on the sale of the partnership interest is attributable to unrealized receivables and substantially appreciated inventory, it will be treated as ordinary gain or loss. Substantially appreciated inventory in this section means property of the partnership of the kind described in section 1221(1) of the Code, which includes property held primarily for sale to customers in the ordinary course of business. 26 U.S.C.A. § 751(d) (2) (A). Therefore, since the joint venture held the property primarily for sale to customers in the ordinary course of its business, even if it be here considered that plaintiff sold an interest in the joint venture as opposed to a sale of his interest in the lots, he would not be entitled to capital gains treatment. See Estate of Freeland v. C. I. R., 393 F.2d 573 (9th Cir. 1968). As stated in *Estate of Freeland, supra* at 584, "The clear purpose of section 751 is to prevent members of partnerships from reducing their tax liability by converting potential ordinary income—attributable to inventory or unrealized receivables—into capital gain by selling their partnership interests. * * * This purpose would in many instances be frustrated if partners' decisions to sell their interests necessarily sufficed to establish the sort of 'change of purpose' which petitioners contend occurred here."

Accordingly, judgment is hereby rendered for defendant. This memorandum opinion is intended to suffice as appropriate findings of fact and conclusions of law in accordance with Rule 52, Federal Rules of Civil Procedure.

Let counsel for defendant prepare an appropriate judgment in accordance herewith and submit same to the court after affording counsel for plaintiff an opportunity for suggestions as to form.